UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MUNJED AL MUDERIS, *et al.*,

                Plaintiffs,

vs.

FRED HERNANDEZ., *et al.*,

                Defendants.

Case No.: 2:22-cv-00876-GMN-NJK

**ORDER RELEASING DEFENDANT FRED HERNANDEZ**

      This written Order follows the Status Hearing held before the Court on April 2, 2025.

**I.     BACKGROUND**

      The full background of this case has been well articulated throughout the proceedings. As such, the Court only repeats facts pertinent to the instant matter.

      Plaintiffs obtained judgment against Defendant Fred Hernandez's former company, Amputek, Inc., for $2,610,000.00 in 2:19-cv-1002 APG-DJA. The current case arose out of Defendant Fred Hernandez's purported attempt to avoid that money judgment entered against himself and his Las Vegas business Amputek, by creating another business, Osseotek, Inc. (*See generally* Am. Compl., ECF No. 65). Plaintiffs alleged that Hernandez fraudulently transferred Amputek's assets to Osseotek to prevent Plaintiffs from collecting on the judgment. (*Id.* ¶¶ 58–64).

      On November 29, 2023, following an evidentiary hearing where Hernandez testified and admitted he had created Osseotek and transferred Amputek's assets to avoid paying the Judgment entered in the original case, the Court remanded Hernandez to United States Marshals Service custody for failing to comply with its Contempt Order, (ECF No. 63). (*See* Order, ECF No. 96). Then on March 19, 2024, the Court granted summary judgment in favor of Plaintiffs and entered Judgment against Defendants Hernandez, Valdez, and Osseotek. (*See*

Mins. of Proceeding, ECF No. 132). The Parties' April 2025 Joint Status Report informs the Court that the Parties remain unable to reach an agreement regarding the contempt of Hernandez, despite having had various settlement discussions. Hernandez has been in custody for over 16 months.

## II. LEGAL STANDARD

"The paradigmatic coercive civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" *Int'l Union, UMWA v. Bagwell*, 512 US. 821, 828 (1994) (citation omitted). "Imprisonment for a fixed term similarly is coercive when the contemnor is given the option of earlier release if he complies." *Id.* (citing *Shillitani v. United States*, 384 U.S. 364, 370 n.6 (1966)). In such circumstances, a civil contemnor can be said to "[carry] the keys of his prison in his own pocket," and is able to purge the contempt in order to obtain his release by committing the very affirmative act which the contemnor had been ordered to effectuate in the first place. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005).

There are two circumstances that can transform an order incarcerating for contempt into a punitive sanction. First, if the contemnor cannot purge the contempt (*i.e.* impossibility) and second, if there is no reasonable possibility that the contemnor will ever comply. *U.S. v. Lippitt*, 180 F.3d 873, 877-78 (7th Cir. 1999). A contemnor may be jailed "indefinitely until he complies" or until he establishes that compliance is not possible. *Armstrong v. Guccione*, 470 F.3d 89, 111 (2d Cir. 2006). An incarceration becomes punitive when it "loses the ability to secure compliance." *Id*. (citing *Maggio v. Zeitz*, 333 U.S. 56, 74 (1948)). There is no specific period after which a contempt sanction transforms from coercive to punitive, but a court has a continuing duty to determine whether its contempt order still has a "reasonable chance" to coerce compliance. *Lippitt*, 180 F.3d at 879. "Each case must be decided on an independent

evaluation of all of the particular facts. Age, state of health, and length of confinement are all factors to be weighed, but the critical question is whether or not further confinement will serve any coercive purpose." *Lambert v. State of Mont.*, 545 F.2d 87, 90 (9th Cir. 1976).

### III. DISCUSSION

Hernandez has been incarcerated since November 2023 for a total of 16 months. The Court finds that Hernandez's contempt status has reached the stage where incarceration has become punitive because the incarceration has appeared to "lose[] the ability to secure compliance." *See Armstrong*, 470 F.3d at 111 (citing *Maggio*, 333 U.S. at 74). The Court further finds that its Contempt Order remanding Hernandez to custody, no longer has a "reasonable chance" to coerce compliance. *See Lippitt*, 180 F.3d at 879. It has become clear that further continued confinement no longer serves any coercive purpose. *See Lambert*, 545 F.2d at 90. All of these determinations are supported by Hernandez's continued noncompliance for the past 16 months and the Parties' inability to reach an agreement regarding his contempt. Furthermore, the length of incarceration is nearing a duration where other district courts have concluded that there is no reasonable possibility that the contemnor will ever comply. *See In Re Kenny G. Enters., LLC*, 2019 WL 508774 (22 months); *Schwarz v. ThinkStrategy Capital Mgmt, LLC*, No. 09-cv-9346, 2017 WL 5558682, at *2 (S.D.N.Y. May 9, 2017) (two years).

Accordingly, the Court hereby releases Hernandez from custody effective immediately. A 6-month status hearing shall be set in this matter to ascertain whether Hernandez has either satisfied the judgment against him or had it discharged. The Court admonishes Hernandez that it has inherent authority to fashion the remedy for contumacious conduct. *See Chambers v. NASCO*, 501 U.S. 32, 45 (1991). Failure to comply with this Order will result in the Court determining whether to hold him in civil contempt once again.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Hernandez be released from custody effective immediately.

**IT IS FURTHER ORDERED** that Defendant Hernandez shall have six months from the date of this Order to satisfy the judgment in this matter in the amount of $830,383.35 plus attorneys' fees in the amount of $130.928.50.  Defendant Hernandez shall use this time frame to access his accounts and work to satisfy the above amounts.

**IT IS FURTHER ORDERED** that the Parties shall appear for a Status Hearing on October 8, 2025, at 9 a.m. in LV Courtroom 7D before Judge Gloria M. Navarro.  If Defendant Hernandez has not either satisfied the judgment or otherwise had the judgment discharged, the Court shall reconsider holding him in civil contempt for violation of this Order.

**DATED** this __2__ day of April, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT